(Decided June 4th, 1862.)

---

## Merchants and Miners Transportation Company, *vs.* The Mayor & City Council of Baltimore.

The Acts of Congress, assenting to the law of this State, of 1791, ch. 60, imposing tonnage dues on vessels arriving in the port of Baltimore, contains a *proviso*, that such tonnage dues shall not be imposed "on vessels propelled by steam, *employed in the transportation of passengers.*" Held :

That this *proviso* extends only to steam vessels whose *chief*, or *principal*, employment, is the transportation of passengers; it does not extend to such vessels, whose general and principal employment, is the transportation of *freight*, and *not* passengers, though, at the same time, carrying passengers.

Appeal from the Court of Common Pleas.

Action brought September 14th, 1858, by the appellees against the appellant, to recover the sum of $443, amount of

harbor duties or port tonnage of two cents per ton, imposed by the plaintiffs upon the "William Jenkins and Joseph Whitney," two steam ships of the defendant, from March 1857, to January 1858, under the Act of 1791, ch. 60, assented to by Acts of Congress with the *proviso* "that nothing herein contained, shall authorise the demand of a duty on tonnage on vessels propelled by steam, employed in the transportation of passengers."

*Exception:* The plaintiffs proved that, the steamers in question belong to the defendant, were propelled by steam and engaged in the transportation of passengers and freight between Baltimore and Boston, that they were built principally for freight, and have saloons on deck; in which they carry passengers, and that at least three-fourths of their business is a freight business.

The defendant proved that these steamers when built, were fitted up for passengers and freight, and that the accommodation for passengers has been increased from time to time, to meet the wants of the public, and at one time at an expense of $7000, that ordinarily they have accommodations sufficient for all passengers who offer, and that they have carried from sixty to seventy each at a time; that the number of passengers is largest in summer, and the average proportion between freight and passengers is from two-thirds to three-fourths for freight and the balance for passengers; that the company advertises for passengers for each trip, and the steamers have all suitable and necessary accommodations for them, and at all times carry passengers which is a part of their regular employment and business at all seasons of the year.

A prayer was then offered by the defendant to the effect, that under the facts thus stated, if found by the jury, the plaintiffs are not entitled to the tonnage duty claimed. The court, (MARSHALL, J.,) rejected this prayer and the defendant excepted and appealed.

The cause was argued before BARTOL, GOLDSBOROUGH and COCHRAN, J.

*Geo. M. Gill*, for the appellant.

The main question in this case is as to the meaning of the terms of the *proviso*, to the Acts of Congress assenting to the Act of 1791, ch. 60. It says, this tonnage duty shall not be levied "on vessels propelled by steam, employed in the transportation of passengers." These vessels of the appellant were propelled by steam, and were employed in the transportation of passengers, but they were also employed in the transportation of freight. The language of the proviso is certainly applicable to them, unless it be considered as applying only to those vessels, which are *exclusively* employed in the transportation of passengers. If a steamboat is used for freight, and for the purpose of avoiding the tax or duty, carries passengers, the exemption would not apply, but if it is built and equipped in good faith, as these vessels were, to carry both passengers and freight, and is used in good faith for both purposes, there the exemption does apply. The tax here imposed is not a general tax or burthen, but a special tax upon a *particular* species of property, and for a *special purpose*, and a limited object. Laws imposing duties upon the public are to be strictly construed. *Dwarris on Stat.*, 749. Statutes for the encouragement of trade and inposing forfeitures will be construed in favor of the public, and the forfeitures not enforced unless expressed in plain terms. *Dwarris*, 743. The obvious purpose of the *proviso* was to encourage and develop the transportation of passengers by steam vessels, and it should be liberally construed in their favor.

But Congress never gave its assent to the Act of 1796, ch. 68, sec. 9, which changed and took away the power of the port-wardens to levy this tax, and vested it in the Mayor and City Council of Baltimore. None of the Acts of Congress refer to this Act of 1796. This point, though not *expressly* raised, is yet covered by the prayer, and is involved, and truly involved, in the case.

Merchants & Miners Transportation Co., *vs.* Mayor & C. C. of Balt.

*John L. Thomas* and *G. L. Dulany*, for the appellees.

This proviso was meant to apply to such vessels *only*, as were employed *exclusively*, in the transportation of *passengers*, or at least to those, only, whose *chief* business it is, to carry passengers, and not as an incidental act to some other employment. It was no doubt intended to foster and encourage such steam vessels as would engage to carry passengers without regard to freight, because of the better accommodation of the traveling public, and a desire to encourage such enterprise, then in its infancy. There can be no doubt that steam vessels carrying freight, are chargeable with this duty. If then, they carry *both* freight and passengers, how can they be exempt? The word, "*employed*," confirms this construction. To be *employed* in any thing or transaction, is to be *devoted to that object*. As soon as *freight* becomes an object, and as long as it is transported, the vessel ceases to be *employed* in transporting passengers. That freight was an *object*, and the *chief* and *main* object of the employment of these vessels, is shown by the evidence in the case. If the construction of the appellant is the true one, the tonnage dues would be a dead demand, as every vessel now propelled by steam and engaged in carrying freight, also carries passengers. If the law had designed to exempt steamers carrying *both* freight and passengers, it would have said so, but omitting freight, and including passengers, it must have intended to exclude the idea that a vessel employed in carrying both, was exempted.

The question of the non-assent of Congress to the Act of 1796, was not raised in the court below, and cannot, therefore, be raised here. But the purpose of the law of Congress was, manifestly, to invest the State of Maryland with power to levy this tax without reference to the agents by which it was to be executed.

Cochran, J., delivered the opinion of this court.

The determination of this appeal depends upon the construction of the Act of Congress of 1814, ch. 119, extended by

subsequent Acts to the 3rd of March 1861, assenting to the imposition and collection of tonnage dues, not exceeding two cents per ton, on vessels arriving in the port of Baltimore, as authorized by the Act of Assembly of 1791, ch. 60. The power to impose and collect the tonnage dues, vested in the port wardens by the Act last mentioned, was, by the Act of 1796, ch. 68, sec. 9, transferred to, and vested in, the Mayor and City Council. The Act of Congress qualified the assent, given for the imposition and collection of dues, as provided by the Act of Assembly, by a *proviso*, that nothing in the Act contained should "authorize the demand of a duty on tonnage on vessels propelled by steam, employed in the transportation of passengers." The tonnage dues, for the recovery of which this suit was brought, were imposed by the Mayor and City Council upon the steam vessels of the appellant employed in transporting freight and passengers, between the ports of Boston and Baltimore. Payment of the dues, thus imposed, was resisted by the appellant, on the ground, that its vessels were exempted from liability by the *proviso* of the Act of Congress, and the question presented is, whether the vessels thus employed in transporting freight and passengers, are exempted from liability by that *proviso?*

This provision of the Act of Congress was apparently designed to encourage the development of a general system of passenger transportation by vessels propelled by steam. Construing the *proviso* by this apparent intent, it would not be held to embrace within its operation steam vessels employed in transporting both freight and passengers; but adopting a more liberal rule, the words, "employed in the transportation of passengers," contained in the *proviso*, should be understood as descriptive, in a general sense, of the substantial or chief employment of vessels to be exempted. Considered as words of general and not of particular description, their use to designate the employment of vessels engaged in transporting passengers and freight, would be proper only in cases where the transportation of passengers is the chief or principal employment, and,

Graff & Gambrill, *vs.* Merchants & Miners Transp. Co., Garn. of Bernard.

understood in that sense, it follows, that no vessel propelled by steam can be exempted from tonnage dues by the proviso, unless its main or principal employment be that of transporting passengers.  We have then to inquire whether the employment of the appellant's vessels was generally described by the terms of the *proviso?*  The evidence contained in the record shows, that their general and principal employment was the transportation of *freight* and *not* passengers, that the freight exceeded the passenger transportation in the proportion of three to one.  We do not think that vessels so employed were contemplated by, or are within the spirit and meaning of, the *proviso.*

Upon our understanding of the terms used in the Acts of Congress, and of the evidence in the case, we must affirm the judgment.

*Judgment affirmed.*

(Decided June 5th, 1862.)